```
                                              CLERK'S OFFICE U.S. DIST. COURT
                                                   AT ROANOKE, VA
                                                       FILED
                                                   NOV 2 0 2006
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF VIRGINIA    JOHN F. CORCORAN, CLERK
                   ROANOKE DIVISION           BY:
                                                   DEPUTY CLERK
```

DAVID A. LOPARO, )
    Plaintiff, ) Civil Action No. 7:06-cv-00654
 )
v. ) **MEMORANDUM OPINION**
 )
UNNAMED DEFENDANTS, et. al., ) By: Hon. James C. Turk
    Defendant(s). ) Senior United States District Judge

Plaintiff David A. Loparo, a federal inmate proceeding pro se, styled his pleading as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. In his complaint, Loparo challenges a federal statute authorizing prison officials to collect samples of deoxyribonucleic acid ("DNA") from convicted felons to be maintained in a national data base maintained primarily for use in criminal investigations. See 42 U.S.C. § 14135a(a)(B) ("DNA Act").[1] Lomparo fears that the Bureau of Prisons ("BOP") will implement this statute against him in a manner that violates his rights under the Fourth and Fifth Amendments to the United States Constitution and interferes with his right to free exercise of his religious beliefs, in violation of federal statutes. Because the claimed violations of Lomparo's rights have no bearing on the fact or length of his confinement, the court finds that they are not properly raised under § 2241. Such claims are appropriately construed as a civil rights complaint against prison officials, pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). As Lomparo's allegations fail to state any

---

[1] The full name of this legislation was the DNA Analysis Backlog Elimination Act of 2000. Section (d) of 28 U.S.C. § 14135a(1)(d) was amended in 2004 to cover any convicted felon in federal custody. See Pub.L. 108-405, § 203(b), 118 Stat. 2260, 2270 (2004).

1

actionable Bivens claim, however, the court will dismiss the entire complaint without prejudice, pursuant to 28 U.S.C. §1915A(b)(1).[2]

I.

Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). On the other hand, "constitutional claims that merely challenge the conditions of a prisoner's confinement . . . fall outside of that core [of habeas corpus]" and must be raised in a civil action against prison officials, pursuant to 42 U.S.C. § 1983 (by state prisoners) or Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (by federal prisoner). Nelson v. Campbell, 541 U.S. 637, 643 (2004); see also Muhammed v. Close, 540 U.S. 749, 750 (2004).

Loparo alleges that relying on the DNA Act, the BOP will forcibly extract his blood and retain his DNA samples indefinitely without limitation as to use. He characterizes this practice as an illegal condition of his confinement and seeks a court order directing officials not to draw or retain his DNA sample. Loparo does not allege that extraction or retention of the DNA sample affects the fact or the length of his current confinement in any way. Accordingly, the court cannot find that his present action states any habeas claim actionable under § 2241. As he alleges that implementation of the DNA Act against him violates his federal constitutional and statutory rights, his claims arise as an attempted civil rights complaint against federal officials, pursuant to Bivens. Accordingly, the court construed Loparo's pleading as a Bivens action.

---

[2] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

II.

Upon consideration of Loparo's claims under Bivens, the court concludes that he has failed to allege facts stating any actionable claim. First, he claims that the DNA Act cannot apply to him because after completing his federal sentence, he will be released to state prison officials to serve a term of confinement under state law. This claim fails under the plain language of DNA Act itself. See 42 U.S.C. § 14135a(a)(1)(B) ("The Director of the [BOP] shall collect a DNA sample from each individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying Federal offense (as determined under subsection (d) of this section)"). Lomparo admits that he is in federal prison, convicted of an offense that qualifies him for the DNA collection practice. He does not point to any exception in the statute for inmates transferring from federal to state custody, and the court finds none.[3]

Second, Lomparo complains that the list of qualifying offense in Section 28.2 of Title 28 of the Code of Federal Regulations ("CFR") exceeds the scope of the authorizing statute. This assertion is also refuted by the plain language of the statute, as amended in 2004. Section 14153a(d) reads:

> The offenses that shall be treated for purposes of this section as qualifying Federal offenses are the following offenses, as determined by the Attorney General: (a) Any felony; (2) Any offense under chapter 109A of Title 18; (3) Any crime of violence (as that term is defined in section 16 of Title 18; (4) Any attempt or conspiracy to commit any of the offenses in paragraphs (1) through (3).

Lomparo does not explain why any of the offenses listed in the CFR as subject to the DNA Act are not fully authorized under the very broad categories listed in 42 U.S.C. § 14153a(a)(1)(d).

---

[3]Moreover, states (including Virginia) have statutes authorizing collection and retention of DNA samples from convicted felons. See Virginia Code § 19.2-310.2.

3

Third, Lomparo complains that the extraction of his blood and any subsequent analysis of his DNA are unreasonable, suspicionless searches, in violation of the Fourth Amendment. This claim also fails. The United States Court of Appeals for the Fourth Circuit has expressly held that "the Fourth Amendment does not require an additional finding of individualized suspicion before blood can be taken from incarcerated felons for the purpose of identifying them." Jones v. Murray, 962 F.2d 302, 3060-07 (4th Cir. 1992) (finding no Fourth Amendment problem with Virginia Code § 19.2-310.2 authorizing extraction and retention of DNA samples from all felons for law enforcement data base). The court further found that blood extractions pursuant to the Virginia statute were reasonable searches for Fourth Amendment purposes, because "the minor intrusion caused by the taking of a blood sample is outweighed by Virginia's interest, as stated in the statute, in determining inmates' 'identification characteristics specific to the person' for improved law enforcement." Id.

Lomparo does not allege any facts suggesting that blood extractions or analyses authorized under the federal DNA act are any more intrusive or any less important to law enforcement than blood extractions or analyses under the Virginia DNA statute that the court in Jones found constitutional under the Fourth Amendment. Moreover, contrary to Lomparo's allegations, the federal statute strictly limits use of the DNA data base to law enforcement and criminal defense purposes and requires removal of an inmate's DNA sample from the data base upon proof that the conviction warranting the extraction of the sample has been overturned. 42 U.S.C. §§ 14132(d), 14135e(a). Under Jones, the court cannot find that implementation of the federal DNA Act against Lomparo violates his Fourth Amendment rights in any way.

Fourth, Lomparo objects on religious grounds to the BOP blood extraction and retention of his DNA. In support of this claim, he cites the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to 2000bb-4, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. Both of these Acts prohibit prison officials from placing a substantial burden on an inmate's free exercise of his religious beliefs unless the officials prove that the burdening regulation furthers a compelling interest by the least restrictive means. 42 U.S.C. § 2000bb-1; 42 U.S.C. § 2000cc-1. Lomparo fails utterly to explain how extraction of his blood for the DNA data base burdens any aspect of his religious practice. Even if he could prove sufficient burden on his beliefs, this court has previously held that the state has a compelling interest in maintaining a DNA data base for identification purposes and to deter future crime. Jones v. Murray, 763 F.2d 842, 849 (W.D. Va. 1991), rev'd on other grounds, 962 F.2d 302 (4th Cir. 1992). Lomparo does not suggest that there is any less restrictive means of DNA collection that would be consistent with his religious beliefs and meet the needs of law enforcement as well as the blood samples do. As Lomparo thus fails to allege facts stating a claim under RFRA or RLUIPA, the court will dismiss this claim, pursuant to § 1915A.[4] An appropriate order shall be issued this day. Accordingly, the court finds that plaintiff's complaint must be dismissed for failure to state a claim, pursuant to §1915A(b)(1). An appropriate order shall be entered this day.

---

[4] In addition, Lomparo admits that he has not yet exhausted his administrative remedies as to any aspect of his complaints about the DNA Act. He offers affidavits to support his assertion that a prison official refused on one occasion to give Lomparo an administrative remedy form because he already had one pending; inmates are only allowed to have one such remedy pending at any one time. The court does not find this evidence to prove that administrative remedies were not available to Lomparo concerning the DNA Act. Because Lomparo clearly did not exhaust available administrative remedies before filing this action, his complaint might also be dismissed for failure to comply with 42 U.S.C. § 1997e(a).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 20th day of November, 2006.

/s/ James C. Turk
Senior United States District Judge